IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| STEPHANIE ERICKSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CV09-204-S-EJL-LMB |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| ING LIFE INSURANCE & ANNUITY, | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the undersigned Magistrate Judge by Order of Referral dated

February 24, 2010 (Docket No. 46), is Defendant's Motion for Partial Summary Judgment

(Docket No. 27).  The Court heard oral argument of counsel and took the motion under

advisement on April 28, 2010.  Having carefully reviewed the parties' briefs, cited authorities

and the existing record, the following Report and Recommendation is issued.

## BACKGROUND

 Building Materials Holding Corporation (BMHC) is a holding company which provides

capital, management and administrative resources to its subsidiaries which provide building

materials and residential construction services throughout the United States.  *Statement of*

*Undisputed Material Facts Supporting Defendant's Motion for Partial Summary Judgment on*

*Counts One and Two of Plaintiffs' Complaint* (Docket No. 28) ("*DSOF*"), ¶¶ 1 & 3.   Plaintiffs

**REPORT AND RECOMMENDATION - 1**

to this action include BMHC, as the sponsor and named fiduciary of one of its retirement plans[1]

("the Plan"), and the other named fiduciaries suing on behalf of the Plan.   Defendant is ING Life

Insurance & Annuity Company ("ILIAC").

ILIAC entered into a contract with the Plan trustees on behalf of the Plan to provide

certain administrative services to the Plan in connection with ILIAC's holding the invested Plan

funds in an annuity.  *DSOF*, ¶ 1; *Affidavit of Ian Dunn* (hereafter, *"Dunn Aff."*), Exh. A

(hereafter, "Contract") (Docket No. 31).  The services included processing contributions to the

Plan (*Contract*, § 3.01), allocating contributions according to the express instructions of the

Plan's trustees or participants (*id.*, § 3.02), and making payments to the Plan's participants or

others as directed "in writing" by the Plan, (*id.*, § 8.06).  *See also Plaintiffs' Statement of Facts*

*In Response to ILIAC's Motion For Partial Summary Judgment Filed on January 4, 2010*

*(Clerks Docket 27)*, (Docket No. 37-1) (hereafter, "PSOF"), ¶¶ 1 - 4.

Under the Contract, ILIAC purchased investments with the contributions it received, as

directed by the Plan trustees or participants, from a list of options pre-selected and approved by

the trustees, and maintained individual record-keeping accounts for each Plan participant.  *See*

*Contract*, § 3.  If ILIAC received a contribution, but no allocation instructions, the Contract

provided that ILIAC would return the contribution.  *Contract,* § 3.02.

Once Plan contributions were transmitted to ILIAC, the funds were held in open-ended

mutual funds in the investment market.  *Dunn Aff.*, Exh. C; *PSOF*, ¶ 3.  The Plan trustees and

---

[1]The name of the plan involved in this case is BMHC 401(k) and Saving Plan, but the
named plaintiff is BHMC BMCC Employees Savings & Retirement Plan for reasons which
remain unclear to this court but are not at issue in this motion.  For the sake of avoiding
confusion, the Court will refer only to "the Plan."

**REPORT AND RECOMMENDATION - 2**

participants did not have direct access to the funds.  *PSOF*, ¶¶ 1 - 4.  ILIAC was the sole

signatory on the Plan accounts, and had the exclusive authority to write checks on the accounts

to make the payments or invest the funds as directed by the trustees or Plan participants.  *Id.*  The

Contract provided, however, that the trustees directed all distributions, and could terminate the

Contract at any time.  *See Contract,* § 5.06

ILIAC made payments to itself for its administrative fees which were pre-determined by

formula set forth in the Contract on a quarterly basis.  *PSOF*, ¶ 5.

The Contract specifically stated that ILIAC was "not the Plan administrator or the

fiduciary and has no discretion or control over the Plan or its assets."  *Contract*, § 2.01.

The Plan trustees, on behalf of the Plan, also signed several other documents in

conjunction with the Contract:

- the "ING MAP Plus Contract Charges, Compensation, Disclosure, Fund

  Selection, and Plan Administrative Support" document which listed the

  administrative support services ILIAC agreed to provide under the Contract

  including certain record keeping services, (*Dunn Aff*., Exh. C) (hereafter,

  "Administrative Support Document");

- a Contract Services Agreement whereby the Plan elected the accounts to create at

  ILIAC and how funds would be transferred by the Plan to those accounts, (*Dunn

  Aff.*, Exh. D);

- an Application for Group Annuity Contract, (*Dunn Aff.*, Exh. E); and

- a Third Party Administrator (TPA) Payment Request establishing Pinnacle

  Pension Services of Boise, Idaho as the Plan's third party administrator, and

**REPORT AND RECOMMENDATION - 3**

directing ILIAC to distribute a predetermined fee to Pinnacle out of the Plan

assets; (*Dunn Aff*, Exh. F).  *See also PSOF*, ¶ 6.

In early January 2008, Plan representatives began discussions with ILIAC regarding the

Plan's intent to terminate its Contract with ILIAC and to transfer the Plan's funds to Prudential.

ILIAC representatives worked with the trustees and Prudential to accomplish the transfer.  *See*

*Dunn Aff.*, Exhs. G, I - K; *Supplemental Affidavit of Ian Dunn*, Exh. H (Docket No. 40-1); *PSOF*,

¶ 9.  On April 28, 2008, Stephanie Erickson, a named Plan trustee, directed ILIAC to "liquidate

the assets in all of the plans . . .  and wire the proceeds to Prudential on May 1, 2008 using the

wire instructions [enclosed]."  *Dunn Aff.*, Exh. M.  "[T]he trustees, the participants and

Prudential were dependent on ILIAC to make the transfer.  *PSOF*, ¶ 7.

On May 1, 2008, ILIAC entered the wire transfer on 2:22 pm, it was approved at 2:22

pm, and "the funds were released from ILIAC's control at 3:59 pm EST.  *DSOF*, ¶ 17; *Dunn Aff.,*

Exh. N.  Prudential received the Plan funds at 4:26 pm EST.  *DSOF*, ¶ 17; *Compl.* ¶  26.

Plaintiffs claim that because Prudential did not receive the Plan funds of approximately

$104 million by 4:00 pm EST, the Plan lost in excess of $375,790.16 in gains it would have

otherwise realized from the market on May 1st.  *Dunn Aff.*, Exh. O.  Plaintiffs allege claims for

relief for breach of fiduciary duty under several provisions of ERISA and under Idaho state law,

negligence, promissory estoppel and breach of contract. Defendant seeks partial summary

judgment in its favor on Plaintiffs' ERISA claims only.  Specifically, ILIAC moves for summary

judgment on Plaintiffs' first two causes of action which allege breach of fiduciary duty under (1)

sections 404 and 502(a)(2), and (2) sections 404 and 502(a)(3) of ERISA.

**REPORT AND RECOMMENDATION - 4**

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

One of the principal purposes of the summary judgment motion "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis omitted).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255.  If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim.  *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as

**REPORT AND RECOMMENDATION - 5**

affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by [] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324 (quotations omitted).

## ANALYSIS

There are no disputed questions of fact in this case.[2]  The issue presented by the current motion is one of law,[3] and narrow: Whether ILIAC assumed a fiduciary responsibility to the Plan under ERISA when it  transferred all of the funds in its possession to Prudential pursuant to the trustees' directions upon termination of ILIAC's administrative services contract.  Plaintiffs contend that ILIAC assumed fiduciary responsibilities in exercising control over the disposition of the Plan assets.  ILIAC denies that it exercised the requisite control over the Plan's assets, and maintains that its role was purely administrative and its function in transferring the Plan funds was purely ministerial.  As such, ILIAC argues, as a matter of law, it is not a fiduciary to the Plan, and its obligations and responsibilities are governed exclusively by the terms of the administrative services contract.

---

[2]  It is undisputed that the Plan is a sponsored employee benefits plan governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

[3]*See* 29 U.S.C. § 1002(A)(21).  *See Kayes v. Pacific Lumber Co.*, 51 F.3d at 1458; *see also Hamilton v. Carell*, 243 F.3d 992, 997 (6th Cir.  2001) (Where there are no disputed questions of fact, the fiduciary status of an individual or entity is a matter of law for the Court to determine.)

**REPORT AND RECOMMENDATION - 6**

**A.      Applicable Law on ERISA Fiduciary Status.**

ERISA specifies three ways in which one may obtain fiduciary status.  The statutory

provision relevant to this matter[4] provides that a fiduciary is someone who "exercises any

discretionary authority or discretionary control respecting management of such plan or exercises

any authority or control respecting management or disposition of its assets ... [or] has any

discretionary authority or discretionary responsibility in the administration of such plan." 29

U.S.C. § 1002(21)(A)(i) and (iii).  *See Patelco Credit Union v. Sahni*, 262 F.3d 897, 907 (9th Cir.

2001).  The Ninth Circuit construes this definition liberally.  *See Arizona State Carpenters*

*Pension Trust Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997).  Determinations of whether a

party is a fiduciary focus on the party's functional control and authority over a plan or its assets

rather than how their duties are formally characterized. *CSA 401(K) Plan v. Pension Prof'ls, Inc.*,

195 F.3d 1135, 1138 (9th Cir. 1999).

> ERISA . . . require[s] . . . that the fiduciary with two hats wear only one at a time,
> and wear the fiduciary hat when making fiduciary decisions. . . .  Thus, the statute
> does not describe fiduciaries simply as administrators of the plan, or managers or
> advisers. Instead it defines an administrator, for example, as a fiduciary only "to the
> extent" that he acts in such a capacity in relation to a plan.  29 U.S.C. §1002(21)(A).
> In every case charging breach of ERISA fiduciary duty . . .  the threshold question
> is not whether the actions of some person employed to provide services under a plan
> adversely affected a plan beneficiary's interest, but whether that person was acting
> as a fiduciary (that is, was performing a fiduciary function) when taking the actions
> subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 225-26, 120 S.Ct. 2143, 2152-153 (2000).

_____

[4]Plaintiffs concede that the first two - as a "named fiduciary," 29 U.S.C. § 1102(a)(1), or
an "investment manager," 29 U.S.C. § 1002(38) - are not at issue in this case.

**REPORT AND RECOMMENDATION - 7**

**B.  Discussion**

Plaintiffs contend that ILIAC is a fiduciary primarily because it exercised control over the disposition of the plan assets when it transferred the funds to Prudential on May 1, 2008.  *See* 29 U.S.C. § 1002(21)(A)(i).  Plaintiffs also contend that ILIAC exercised control over the plan assets by:

- receiving payments or assets . . . that were contributed on behalf of plan participants and then placing those assets into its fund over which it had authority,  *Trustees of S.Cal. Bakery Drivers Sec. Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007);

- being the only signatory on the Plan accounts, *IT Corp. v. General American Life Insur. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997) ("The right to write checks on plan funds is 'authority or control respecting management or disposition of its assets,'" (*quoting* 29 USC § 1002(21)(A)(I)); and

- writing checks to pay participants and by paying itself its administrative fee, *Briscoe*, 444 F.3d 478, 493 (6th Cir. 2006).

Plaintiffs rely primarily on *IT Corp. v. General American Life Insur. Co.*, 107 F.3d 1415 (9th Cir. 1997), in support of their claim.  In that case, IT Corporation hired General American Life Insurance Co.  (hereafter "General American") to administer its employee health benefits plan.  *Id*. at 1417.  Under the governing document (the "Administrative Services Agreement"), IT Corp.  was to establish a bank account and maintain a sufficient balance to cover checks.  General American had check writing authority, and was to pay all claims it determined were payable, but refer contested or doubtful claims to the trustees.  *Id*. at 1417-18.  With this check-writing authority, General American ended up paying out $600,000 from the ERISA plan bank

**REPORT AND RECOMMENDATION - 8**

account for medical expenses for an employee's dependant child who was allegedly ineligible for benefits.  The Plan, IT Corp., and a participant-employee sued General American for breach of fiduciary duty under ERISA for depleting the amount available in the fund account for proper claims.  The district court dismissed that action.

The Ninth Circuit reversed the district court, holding that there were questions as to whether or not General American was a fiduciary under ERISA based on (1) its discretionary authority over the Plan involved in deciding which claims were contested or doubtful, and which to pay, and (2) its control or authority over the management or disposition of the plan assets through its check-writing authority.  *See id.* at 1420. The court specifically noted that its second finding did not depend on General American having discretion, and found on the record as it stood, that General American controlled the money in the plan's bank account.  Specifically, the Court noted that "as a practical matter, a substantial amount of money would be under the control of General American, in the form of a bank account which it could deplete by writing checks."  *Id.* at 1421.

The Ninth Circuit in *IT Corp.* could not reconcile General American's control over the plan's bank account with a holding that it was not a fiduciary *as a matter of law. Id.*[5]  The Court reasoned that "the words of the ERISA statute, and its purpose of assuring that people who have practical control over an ERISA plan's money have fiduciary responsibility to the plan's

_____

[5]However, because the Court of Appeals was not considering an appeal of a district court ruling on cross-motions it did not hold as a matter of law that an entity with check writing authority necessarily was a fiduciary. The Court of Appeals simply could not agree that General American was *not* a fiduciary *as a matter of law*.

**REPORT AND RECOMMENDATION - 9**

beneficiaries, require that a person with the authority to direct payment of the plan's money to be deemed a fiduciary." *IT Corp.*, 107 F.3d at 1421 (emphasis added).

Plaintiffs argue here that similarly, ILIAC was a fiduciary because it alone had the practical control over and ability to effectuate their transfer from ILIAC's possession to Prudential on May 1, 2008.  No other person or entity had the ability to effectuate the release. *See Statement of Undisputed Material Facts*, ¶ 7 ("The Funds were released from ILIAC's control at 3:59 pm EST.")

ILIAC argues, however, that it is not a fiduciary because it in fact had no control or authority over the Plan assets because it operated only at and upon the express direction of the Plan trustees or participants.  ILIAC argues that as a matter of law, this is not "exercising any control or authority over the management or disposition of plan assets."  29 U.S.C. 1002(21)(A)(i).

ILIAC argues that Congress intended to exempt from the terms "control or authority," any type of act that may be considered *purely ministerial*, and that ILIAC's functional duties under the governing agreements were just that - purely ministerial.   Defendant points to 29 C.F.R. § 2509.75-8, which reads in relevant part:

> D-2 Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:
>
> (1)  Application of rules determining eligibility for participation or benefits;
> (2)  Calculation of services and compensation credits for benefits;
> (3)  Preparation of employee communications material;
> (4)  Maintenance of participants' service and employment records;
> (5)  Preparation of reports required by government agencies;

**REPORT AND RECOMMENDATION - 10**

(6) Calculation of benefits;
(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) *Collection of contributions and application of contributions as provided in the plan*;
(9) Preparation of reports concerning participants' benefits;
(10) Processing of claims; and
(11) Making recommendations to others for decisions with respect to plan administration?

A: No. Only persons who perform one or more of the functions described in section 3(21)(A) of the Act with respect to an employee benefit plan are fiduciaries. *Therefore, a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.*

(Emphasis added).

ILIAC argues that because the governing agreements specify that ILIAC perform the same or similar duties as described above and only "within a framework of policies, interpretations, rules, practices and procedures made by other persons," ILIAC cannot be a fiduciary.  With respect to the transfer of the funds specifically,  ILIAC points to the fact that the funds were transferred pursuant to the wire transfer instructions from the trustees, and that ILIAC otherwise would have had no authority to transfer the funds to Prudential.  Accordingly, ILIAC argues that it did not exercise control over the disposition of the assets, and did not assume fiduciary status as a matter of law.

**REPORT AND RECOMMENDATION - 11**

ILIAC relies on *Arizona State Carpenters v. Citibank*, 96 F. 3d 1310 (9th Cir. 1996)*,
withdrawn by* 108 F.3d 216 (9th Cir. 1997) (February)*, and superceded by,* 125 F.3d 715 (9th
Cir. 1997) (September), for support for its position.  In that case, Citibank served as the
depository and custodial agent for certain pension trust funds.  Pursuant to the governing
agreements, Citibank was required to (1) receive the fund monies and pay them out as directed
by the trustees or their agent; (2) receive and hold trust fund investments (and income) for
disposition as directed by the trustees or their agent; (3) invest and reinvest trust fund monies as
directed by the trustees or their agents, and (4) furnish regular reports regarding the trust fund
money transactions.  125 F.3d at 718.

The agreements in *Arizona State Carpenters v. Citibank* also named a fund administrator
and an investment manager.  *Id.* The trust funds in that case suffered significant losses due to
advice from the investment manager, and the trustees brought suit.  They made a claim against
Citibank for breach of the custodial agreement in failing to notify them of defaults on payments
on investments that the investment manager made on behalf of the trust funds.  *Id.* at 719.   The
trustees also claimed breach of fiduciary duty under ERISA. *Id.*

The district court concluded that Citibank was not a fiduciary and the Ninth Circuit Court
of Appeals affirmed in relevant part.  The Ninth Circuit court framed the issue as follows:

> Whether, pursuant to ERISA § 405(c)(1)(B), the trustees delegated to Citibank
> fiduciary responsibilities to hold, safeguard, and account for the plans' assets and
> income, thereby making Citibank a fiduciary under ERISA §§ 3(21)(A), 404(a),
> 405(a), 409(a), and 502(a)(2).

*Id.* at 720 - 21.

**REPORT AND RECOMMENDATION - 12**

The Ninth Circuit court concluded that the bank had not assumed a fiduciary role, and reasoned as follows:

> A person or entity who performs only ministerial services or administrative functions within a framework of policies, rules, and procedures established by others is not an ERISA fiduciary. To become a fiduciary, the person or entity must have control respecting the management of the plan or its assets, give investment advice for a fee, or have discretionary responsibility in the administration of the plan.

*Id.* at 721-22 (*citing* 29 C.F.R. § 2509.75-8).

The Court of Appeals then held that Citibank's preparing reports and making decisions about the reports' format did "not amount to an assumption of control or authority over the Trust Funds which, by the terms of the Agreements, Citibank did not have." *Id.* The court further reasoned that to hold otherwise, among other things, would "creat[e] a climate in which depository institutions would routinely increase their fees to account for the risk that fiduciary liability might attach to non-fiduciary work." *Id.*

ILIAC contends here that, like Citibank functioning as a depository, it exercised no authority or control over management or disposition of the Plan assets when is acted solely at the direction of the Plan trustees and or participants.

After a careful and thorough review of the record, and applying controlling legal authorities, this Court agrees with ILIAC. The record does not support a conclusion that ILIAC exercised the requisite control or authority over the management or disposition of the plan assets in performing its functions as the plan administrative service provider in connection with the annuity.   As a practical matter, ILIAC did not have "*the authority to direct payment of the plan's money*" generally in order to "be deemed a fiduciary." *See  IT Corp.*, 107 F.3d at 1421 (emphasis added). Further, this Court cannot find that ILIAC's act of transferring the funds to

**REPORT AND RECOMMENDATION - 13**

Prudential at the direction of the trustees in termination of the contract converted ILIAC to the status of a fiduciary.

In this instant action, ILIAC's express role, function and responsibilities set forth in the parties' agreements are nearly identical to those identified in the federal regulation as "purely ministerial." *See* 29 C.F.R. § 2509.75-8. The crux of this issue therefore comes down to whether ILIAC otherwise voluntarily assumed a fiduciary duty by taking physical possession and control of the Plan assets in order to carry out its ministerial role. After a careful analysis of the record and applicable, controlling law, this Court is not persuaded that is the appropriate legal or factual conclusion to reach.

It is true that the applicable statutory provision treats management and control *over funds* differently from management and control over *administration of the plan*, expressly requiring discretion be involved in the former, but not the latter. *See IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415, 1421-1422 (9th Cir.1997); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 909 (9th Cir. 2001); *Yeseta v. Baima*, 837 F.2d 380, 386 (9th Cir. 1988)). It is also true that the terms "any authority or control" could conceivably include mere physical control or possession. In this Court's view, however, this is not the intent of ERISA as clarified by controlling Ninth Circuit precedent.

The best indication from the Ninth Circuit Court of Appeals on the issue of mere physical possession or control is found in *IT Corp*, in the court's comment distinguishing *Arizona State Carpenters*:

> Authority over a plan's money is not the same thing as being a depository of the money. If the plan's money is deposited in a bank, that does not *ipso facto* make the bank a fiduciary. *Arizona State Carpenters Pension Trust Fund v. Citibank* (Arizona), 96 F.3d 1310, 1317 (9th Cir. 1996). When money is deposited in a bank,

**REPORT AND RECOMMENDATION - 14**

> generally the bank has no authority over who the money is paid to, and the bank manages its own money, not the depositor's because the depositor loans its money to the bank for its own use.  People with checking accounts do not worry that their banks will pay out their money to persons of the banks' choice, because the bank has no authority or control entitling it to pay anyone but payees and endorsees on checks. Unlike Citibank in *Arizona* [sic] *Carpenters*, General American had authority to write checks, that is, to dispose of plan assets.

*IT Corp.*,107 F.3d at1422; *see also id.* at 1419 ("If a fiduciary tells a bookkeeping service to send a check for $950 to Mercy Hospital, the bookkeeping service does not thereby become a fiduciary."); *Chao v. Day*, 436 F.3d 234, 237 (D.C. Cir. 2006) (ERISA's control or authority clause does not "extend fiduciary status to every person who exercises 'mere possession, or custody' over [a] plan['s] assets.") (internal citations and quotations omitted).

After considering all alternatives, this Court concludes that practical control is the privotal issue.  The Tenth Circuit notes in *David P. Coldesina, DDS PC, Employee Profit Sharing Plan and Trust*, 407 F.3d 1126, 1133-34 (10th Cir. 2005):

> Indeed, this practical reality is precisely why control over assets is treated differently than control over management. . . . As a general matter, a relationship of trust is established when one acquires possession of another's property with the understanding that it is to be used for the owner's benefit, and in these circumstances an obligation arises on the part of the one in possession to act in the owner's bests [sic] interests rather than his own.  As such, assigning fiduciary obligations serves the purposes of ERISA.

A person or entity who acts only at the direction of another, and has no authority to manage or dispose of assets without such direction, does not have "practical control or authority" over the assets.  *Accord IT Corp*, 107 F.3d at 1422 (distinguishing mere depository institution from entity exercising authority or control).

In this instant action, ILIAC did not have the requisite authority or control to direct payment out of the Plan funds generally that would give rise to or create a fiduciary status.

**REPORT AND RECOMMENDATION - 15**

ILIAC acted only in accordance with the express direction of the Plan trustees, or participants. Accordingly, unlike the defendant plan administrator in *IT Corp*., but akin to the trust fund depository and custodian in *Arizona State Carpenters* case, the Plan at issue here was not in the position of "worrying" that ILIAC would pay out the Plan's money to persons of ILIAC's choice. *See IT Corp.*, 107 F.3d at 1422. Instead, ILIAC transferred the money to Prudential, upon termination of the contract, as specifically directed by the Plan trustees. Whether it did so in a negligent manner, or in breach of the parties' governing documents, is another matter - but this Court concludes that it is not a matter which invokes a fiduciary status under ERISA.

Moreover, as implied by the Ninth Circuit Court of Appeals, the act of transferring the money to Prudential upon termination of the Contract did not convert ILIAC - an otherwise non-fiduciary - into a fiduciary. *See Arizona State Carpenters Pension Trust Fund*, 125 F.3d at 722 (discouraging attaching fiduciary status to non-fiduciary work). Inherent in taking possession of the Plan funds without assuming a fiduciary role is the converse ability to return the Plan funds without assuming a fiduciary role. Thus, this Court concludes that ILIAC did not assume fiduciary responsibility in its relationship with the Plan as a matter of law, and recommends that Defendant's motion for partial summary judgment be granted.

## RECOMMENDATION

Based upon the foregoing, the Court hereby recommends that Defendants' Motion for Partial Summary Judgment (Docket No. 27) be GRANTED.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1 and that the failure to do so may result in that party waiving the right to raise factual and/or legal objections in the Ninth Circuit

**REPORT AND RECOMMENDATION - 16**

Court of Appeals.  The parties are advised further that this is a report and recommendation and

not a final, appealable order, and thus no appeal can be taken from this report and

recommendation.



DATED:  **June 9, 2010**.

Honorable Larry M. Boyle
United States Magistrate Judge

**REPORT AND RECOMMENDATION - 17**