UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHANIE ERICKSON, et al,<br><br>    Plaintiffs,<br><br> v.<br><br>ING LIFE INSURANCE & ANNUITY COMPANY,<br><br>    Defendant. | Case No. 1:09-CV-00204-EJL<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

On June 9, 2010, United States Magistrate Judge Larry M. Boyle issued his Report and Recommendation in this matter. (Dkt. 53.) Pursuant to 28 U.S.C. § 636(b)(1), the parties had ten days in which to file written objections to the Report and Recommendation. Plaintiffs filed their objections on June 28, 2010. (Dkt. 54.) Defendant filed its response to the objections on July 8, 2010. The applicable federal rules, local rules and statutes do not provide for a reply to be filed.[1]

---

[1] Fed. R. Civ. P. 72(b)(2); Dist. Idaho Loc. Civ. R. 72.1(b); and 28 U.S.C. § 636(b)(1).

**ORDER - 1**

Pursuant to 28 U.S.C. § 636(b)(1)(C) this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." Moreover, this Court "shall make a de novo determination of those portions of the report which objection is made." *Id.* In *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th cir. 2003) the court interpreted the requirements of 28 U.S.C. 636(b)(1)(C):

> The statute [28 U.S.C. § 636(b)(1)(C)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise. As the *Peretz* Court instructed, "to the extent de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *Peretz v. United States*, 501 U.S. 923, 939 (1991) (internal citation omitted). Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct. *See United States v. Ciapponi*, 77 F.3d 1247, 1251 (10th Cir. 1996) ("Absent an objection or request for review by the defendant, the district court was not required to engage in any more formal review of the plea proceeding."); *see also Peretz*, 510 U.S. at 937-39 (clarifying that de novo review not required for Article III purposes unless requested by the parties) . . . .

*See also Wang v. Masaitis*, 416 F.3d 993, 1000 & n.12 (9th Cir. 2005). Based on the objections filed in this case, the Court has conducted a de novo review of the record pursuant to 28 U.S.C. § 636(b).

## FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts and incorporates by reference the factual background as set forth in the Report and Recommendation on pages 1-4:

> Building Materials Holding Corporation (BMHC) is a holding company which provides capital, management and administrative resources to its subsidiaries which provide building materials and residential construction services throughout the United States. *Statement of Undisputed Material*

*Facts Supporting Defendant's Motion for Partial Summary Judgment on Counts One and Two of Plaintiffs' Complaint* (Docket No. 28) ("*DSOF*"), ¶¶ 1 & 3. Plaintiffs to this action include BMHC, as the sponsor and named fiduciary of one of its retirement plans[2] ("the Plan"), and the other named fiduciaries suing on behalf of the Plan. Defendant is ING Life Insurance & Annuity Company ("ILIAC").

ILIAC entered into a contract with the Plan trustees on behalf of the Plan to provide certain administrative services to the Plan in connection with ILIAC's holding the invested Plan funds in an annuity. *DSOF*, ¶ 1; *Affidavit of Ian Dunn* (hereafter, *"Dunn Aff."*), Exh. A (hereafter, "Contract") (Docket No. 31). The services included processing contributions to the Plan (*Contract*, § 3.01), allocating contributions according to the express instructions of the Plan's trustees or participants (*id.*, § 3.02), and making payments to the Plan's participants or others as directed "in writing" by the Plan, (*id.*, § 8.06). *See also Plaintiffs' Statement of Facts In Response to ILIAC's Motion For Partial Summary Judgment Filed on January 4, 2010 (Clerks Docket 27)*, (Docket No. 37-1) (hereafter, "PSOF"), ¶¶ 1 - 4.

Under the Contract, ILIAC purchased investments with the contributions it received, as directed by the Plan trustees or participants, from a list of options pre-selected and approved by the trustees, and maintained individual record-keeping accounts for each Plan participant. *See Contract*, § 3. If ILIAC received a contribution, but no allocation instructions, the Contract provided that ILIAC would return the contribution. *Contract,* § 3.02.

Once Plan contributions were transmitted to ILIAC, the funds were held in open-ended mutual funds in the investment market. *Dunn Aff.*, Exh. C; *PSOF*, ¶ 3. The Plan trustees and participants did not have direct access to the funds. *PSOF*, ¶¶ 1 - 4. ILIAC was the sole signatory on the Plan accounts, and had the exclusive authority to write checks on the accounts to make the payments or invest the funds as directed by the trustees or Plan participants. *Id.* The Contract provided, however, that the trustees directed all distributions, and could terminate the Contract at any time. *See Contract,* § 5.06

ILIAC made payments to itself for its administrative fees which were pre-determined by formula set forth in the Contract on a quarterly basis. *PSOF*, ¶ 5.

The Contract specifically stated that ILIAC was "not the Plan administrator or the fiduciary and has no discretion or control over the Plan or its assets." *Contract*, § 2.01.

The Plan trustees, on behalf of the Plan, also signed several other documents in conjunction with the Contract:

---

[2] The name of the plan involved in this case is BMHC 401(k) and Saving Plan, but the named plaintiff is BHMC BMCC Employees Savings & Retirement Plan for reasons which remain unclear to this court but are not at issue in this motion. For the sake of avoiding confusion, the Court will refer only to "the Plan."

**ORDER - 3**

- the "ING MAP Plus Contract Charges, Compensation, Disclosure, Fund Selection, and Plan Administrative Support" document which listed the administrative support services ILIAC agreed to provide under the Contract including certain record keeping services, (*Dunn Aff.*, Exh. C) (hereafter, "Administrative Support Document");
- a Contract Services Agreement whereby the Plan elected the accounts to create at ILIAC and how funds would be transferred by the Plan to those accounts, (*Dunn Aff.*, Exh. D);
- an Application for Group Annuity Contract, (*Dunn Aff.*, Exh. E); and
- a Third Party Administrator (TPA) Payment Request establishing Pinnacle Pension Services of Boise, Idaho as the Plan's third party administrator, anddirecting ILIAC to distribute a predetermined fee to Pinnacle out of the Plan assets; (*Dunn Aff*, Exh. F). *See also PSOF*, ¶ 6.

In early January 2008, Plan representatives began discussions with ILIAC regarding the Plan's intent to terminate its Contract with ILIAC and to transfer the Plan's funds to Prudential. ILIAC representatives worked with the trustees and Prudential to accomplish the transfer. *See Dunn Aff.*, Exhs. G, I - K; *Supplemental Affidavit of Ian Dunn*, Exh. H (Docket No. 40-1); *PSOF*, ¶ 9. On April 28, 2008, Stephanie Erickson, a named Plan trustee, directed ILIAC to "liquidate the assets in all of the plans . . . and wire the proceeds to Prudential on May 1, 2008 using the wire instructions [enclosed]." *Dunn Aff.*, Exh. M. "[T]he trustees, the participants and Prudential were dependent on ILIAC to make the transfer. *PSOF*, ¶ 7.

On May 1, 2008, ILIAC entered the wire transfer on 2:22 pm, it was approved at 2:22 pm, and "the funds were released from ILIAC's control at 3:59 pm EST. *DSOF*, ¶ 17; *Dunn Aff.,* Exh. N. Prudential received the Plan funds at 4:26 pm EST. *DSOF*, ¶ 17; *Compl.* ¶ 26.

Plaintiffs claim that because Prudential did not receive the Plan funds of approximately $104 million by 4:00 pm EST, the Plan lost in excess of $375,790.16 in gains it would have otherwise realized from the market on May 1st. *Dunn Aff.*, Exh. O. Plaintiffs allege claims for relief for breach of fiduciary duty under several provisions of ERISA and under Idaho state law, negligence, promissory estoppel and breach of contract. Defendant seeks partial summary judgment in its favor on Plaintiffs' ERISA claims only. Specifically, ILIAC moves for summary judgment on Plaintiffs' first two causes of action which allege breach of fiduciary duty under (1) sections 404 and 502(a)(2), and (2) sections 404 and 502(a)(3) of ERISA.

In the Report and Recommendation, Judge Boyle recommends that ILIAC's motion for

summary judgment be granted. Judge Boyle determined that, as a matter of law, ILIAC was not a

fiduciary for the purpose of the transfer of Plan assets to Prudential. Plaintiffs object to the Report and Recommendation and argue that Judge Boyle failed to give sufficient weight to controlling Ninth Circuit case law that would require the Court to find that ILIAC acted as a fiduciary. The Court will address this objection.

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[3]

---

[3] *See also,* Rule 56(3) which provides, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**ORDER - 5**

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## OBJECTIONS

The Plaintiffs argue that the Ninth Circuit's holding in *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d 1415 (9th Cir. 1997) that "'[a]ny' control over disposition of plan money makes the person who has the control a fiduciary" mandates that the Court find ILIAC a fiduciary. *Id.* at 1421. Plaintiffs' contention that ILIAC acted as a fiduciary is critical because "[f]iduciary status

is the key to unlocking ERISA's civil-enforcement scheme." *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006). If Plaintiffs cannot prove that ILIAC is a fiduciary as a matter of law their ERISA claims necessary fail. The facts in this case are essentially uncontested, and therefore summary judgment is proper.

> For the purposes of ERISA, Congress had defined a fiduciary as:
>
> (21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). In their objection Plaintiffs assert only that ILIAC should be considered a fiduciary based on (i). (Pl.'s Objection to Report and Recommendation at 2, Dkt. 54.) Specifically, Plaintiffs point to the language that "a person is a fiduciary with respect to a plan to the extent (i) he exercises […] any authority or control respecting management or disposition of its assets." *Id.* Plaintiffs contend that this section of the statute should be construed as broadly as possible such that ILIAC's power to write checks would automatically confer fiduciary status on it.

Plaintiffs rely heavily on the Ninth Circuit's analysis in *IT Corp*. In that case the defendant served as a third party administrator for an ERISA plan and had the authority to collect contributions and to pay them out to participants. *IT Corp*, 107 F.3d at 1418. The defendant had the authority to determine whether a claim was doubtful or not, and if it was such claims were to be referred to the trustee. *Id.* The defendant was sued by the trustees for paying

out $600,000 dollars to an ineligible party. *Id.* The defendant argued that by the very terms of the contract it could not be a fiduciary. The Ninth Circuit, however, rejected this argument and found that "ERISA defines fiduciary not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan, thus expanding the universe of persons subject to fiduciary duties-and to damages-under § 409(a)." *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis in original). Based on this interpretation the Ninth Circuit not only found that the defendant was a fiduciary under § 1002(21)(A)(i) because it exercised discretion in determining which claims were doubtful; but also because "as a practical matter, a substantial amount of money would be under the control of [defendant], in the form of a bank account which it could deplete by writing checks." *Id.* at 1421. Plaintiffs here argue that ILIAC was in an analogous position.

      ILIAC argues that its position is more analogous to the defendant in *Arizona State Carpenters Pension Fund v. Citibank*, 125 F.3d 715 (9th Cir. 1997). In that case the defendant bank's duties were as a "depository and custodial agent" which mean it was responsible for receiving and paying out trust fund money as directed by the trustees, holding trust fund investments, investing and reinvesting funds as directed by the trustees, and for furnishing daily reports about the fund. *Id.* at 718. The plaintiff in that case brought suit over the reporting requirement and argued that this reporting requirement conferred on the defendant bank discretionary control sufficient to trigger fiduciary status under § 1002(21)(A)(i). *Id.* at 721-22. The Ninth Circuit disagreed. *Id.* at 722. The Ninth Circuit never considered the question of whether the defendant bank, as the holder of the plan's funds, was a fiduciary under the authority and control language in § 1002(21)(A)(i). While the defendant bank's functions certainly

**ORDER - 8**

resemble ILIAC's, *Arizona State* stands only for the proposition that ministerial functions like reporting do not rise to the level of an exercise of discretion. Since Plaintiffs have abandoned the exercise of discretion claim by making no objection to it, *Arizona State* is silent on ILIAC's fiduciary status.

While *Arizona State* is not quite on point, it does speak to a dichotomy between fund holders that the Ninth Circuit has considered relevant when considering a third party administrator's fiduciary status. The Ninth Circuit held in *IT Corp* that "[t]he right to write checks on plan funds is 'authority or control respecting management or disposition of its assets' […] requiring that a person with authority to direct payment of a plan's money be deemed a fiduciary." *IT Corp*, 107 F.3d at 1421. Despite this broad statement, however, the Ninth Circuit carefully walked back this sweeping extension of fiduciary status in two ways. First, the Ninth Circuit noted that if "a fiduciary tells a bookkeeping service to send a check for $950 to Mercy Hospital, the bookkeeping service does not thereby become a fiduciary." *Id.* at 1419. Second, the Ninth Circuit recognized the limited nature of the summary judgment motion before it and held that it "need not decide […] whether [defendant's] authority to instruct the plan's bank to pay money to the order of drawees makes it a fiduciary as a matter of law." *Id.* at 1422. Based on these two reservations it appears that the Ninth Circuit did not intend to extend fiduciary status to an entity that was acting solely as a third party administrator that moved funds at the direction of plan trustees. Plaintiffs contend that *IT Corp* stands for the proposition that all entities with the power to write checks be considered fiduciaries, but the Ninth Circuit expressly held that there may be some entities with that power who nevertheless might not be considered fiduciaries.

**ORDER - 9**

The Court's task is to determine whether ILIAC, as the entity with the sole power to deplete the plan's funds, would automatically become a fiduciary. The Sixth Circuit in *Briscoe v. Fine*, 474 F.3d 642 (6th Cir. 2007) explored the relevant case law pertaining to fiduciary status under ERISA. In that case the plan's account was partially in the defendant's name and the defendant had the duty of processing claims, determining coverage and making payments to eligible employees. *Id.* at 483. The defendant's only financial role was to advise the company on how much money needed to be in the account to cover payments under the plan. *Id.* When the company terminated its relationship with the defendant funds remained in the bank account. The defendant appropriated to itself some of those funds to pay its administrative fee and returned the rest to the company. *Id.* at 484. When suit was brought on the basis of these unauthorized transactions the defendants made the argument that it was acting pursuant to its contract with the company. *Id.* at 492. The court rejected this argument and found that while the "terms of the Agreement may have limited [defendant's] *discretion* over the remaining funds, but did not affect its control over those funds." *Id.* Accordingly, the defendant was found to be a fiduciary to the extent of that transfer because they "acted as a signatory and *unilaterally* disposed of the remaining funds." *Id.* This element of acting unilaterally appears in every case that *Briscoe* considers.

The Court has found no authority which supports the Plaintiffs' argument that a third party administrator acting solely at the direction of the trustees was subject to fiduciary status. In *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126 (10th Cir. 2005) a third party administrator wrote checks to the plan's investment advisor at the advisor's direction, thereby depleting plan funds. *Id.* at 1130. The court found that the third party administrator was a

fiduciary because it exercised its authority and control over plan assets by writing checks and rejected their argument that they were merely following the investment advisor's orders. *Id.* at 1135. The court held that there "were never any express plan policies direct[ing] [third party administrator's] check writing activities, and [plaintiff] was unaware [third party administrator] was writing the checks to [investment advisor]. As such, [third party administrator] assumed control over disposition of the funds by exercising his own judgment rather than acting at the plan's direction." *Id.* at 1134. The court found that the third party administrator could not defend itself by claiming that it relied on the investment advisor's instruction because the agreement was with the plan, and the investment advisor had no authority over it. *Id.* at 1135. The Tenth Circuit seems to indicate, then, that had the third party administrator been writing checks pursuant to a directive from the plan or its trustees, it would not have assumed authority and control over the plan's assets.

Other courts have followed the Tenth and Sixth Circuits in this interpretation. In *Board of Trustees and Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Associates*, 237 F.3d 270 (3rd Cir. 2001) the defendant was tasked with collecting employer contributions to the fund. *Id.* at 271. Ninety eight percent of those funds were to be directed towards a specific entity while the remaining two percent would become an asset of the plaintiff's fund. *Id.* at 272. When the agreement was terminated, the defendant kept the remaining two percent for itself. *Id.* The court found that the defendant could be considered a fiduciary under these facts because it exercised authority and control over the plan funds. *Id.* at 275. In *Trustees of So. Ca. Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642 (9th Cir. 2007) the defendant retained funds that had been paid into its plan after the agreement with the

employer had terminated. *Id.* at 644. The Ninth Circuit concluded that this action was sufficient to establish the necessary exercise of authority and control required of an ERISA fiduciary. *Id.* at 646.

The case that most clearly illustrates this principle, however, is *LoPresti v. Terwilliger*, 126 F.3d 34 (2nd Cir. 1997). In that case, two brothers, both with the equal authority over their company's plan assets, were sued by the participants because one of the brothers, Donald, had used plan funds to pay out other creditors. *Id.* at 37. The Second Circuit held that because of this action Donald was an ERISA fiduciary for his exercise of authority and control over plan assets. *Id.* at 40. However, the other brother, who had the exact same authority as Donald but who did not write any checks, could not be considered a fiduciary because he had not exercised authority or control over plan assets. *Id.* at 40-41. It is clear, then, that fiduciary status does not merely arise because an entity has some authority or control over plan assets, it requires an exercise of that authority or control on the entity's own initiative.

Plaintiffs contend that this reading of § 1002(21)(A)(i) re-injects a discretionary requirement that Congress explicitly left out of the exercise of authority and control language. While the Plaintiffs are correct in asserting that Congress did not impose a discretion requirement, they misread the purpose of the statute. The D.C. Circuit made this clear in *Chao v. Day*, 436 F.3d 234 (D.C. Cir. 2006). In that case the contract between the defendant and twenty four ERISA plans was that they would pay him a fee and he would purchase insurance for the plans. *Id.* at 235. Rather than purchasing insurance, however, the defendant pocketed the money and provided the plans with fake insurance policies. *Id.* The defendant argued that he could not be a fiduciary because by the terms of his contract he did not have the discretionary authority to

deposit the money in his own bank account. *Id.* at 236. The D.C. Circuit rejected this argument and held that to accept it "would do violence to the statutory text." *Id. Chao* helps to illuminate Congress' intent in providing a route to fiduciary status that does not rely on discretion. If fiduciary status could be acquired only to the extent that an entity had discretion in their contract, thieves like the defendant in *Chao* would not be subject to ERISA's damage scheme. The exercise authority and control language in the statute covers this blind spot by imposing liability on anyone who uses plan funds in a way that isn't authorized by the trustees. The court in *Chao* was careful to say, however, that this interpretation "does not, as [defendant] fears-extend fiduciary status to every person who exercises 'mere possession, or custody' over the plan's assets." *Id.* at 237.

It is undisputed that ILIAC exercised only mere possession or custody over the plan assets. To adopt the Plaintiffs' argument that ILIAC could be an ERISA fiduciary merely because it disposed of plan funds at the express direction of the Plan's trustees would expand ERISA liability beyond the scope intended in the fiduciary statute and recognized in the case law. It is difficult to imagine how any bank, which has practical authority and control over its deposits, would not be an ERISA fiduciary under the Plaintiffs' theory. To get their money out of a bank the Plaintiffs would still have to request the bank to disburse those funds, and the bank could refuse, even if they had no legal right to do so. This result, as the Report and Recommendation recognized, would be contrary to the intent of ERISA. (Report and Recommendation at 14.) Had ILIAC unilaterally disposed of the funds by wiring them to Prudential then it is possible that they would have assumed ERISA fiduciary status. However, lacking the unilateral element that distinguished between mere custodians and fiduciaries, it is

not proper for this Court to conclude that ILIAC acted as a fiduciary in this case. Because the facts are uncontested, partial summary judgment should be granted in ILIAC's favor.

The Court notes, like the Report and Recommendation, that this does not foreclose the Plaintiffs' recovery. Whether ILIAC breached its contract or performed its duties under that contract negligently are beyond the scope of this motion.

## CONCLUSION

ILIAC did not exercise the authority and control over plan assets and acted as a mere custodian. Therefore, ILIAC cannot be an ERISA fiduciary under § 1002(21)(A)(i) and is not subject to ERISA liability.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) The Report and Recommendation entered on June 6, 2010 (Dkt. No. 53) be **INCORPORATED** by reference and **ADOPTED** in its entirety.

2) Defendant's Motion for Partial Summary Judgment (Dkt. No. 27) be **GRANTED**.

DATED: **July 22, 2010**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

ORDER - 14