IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO


| | | |
|---|---|---|
| STEPHANIE ERICKSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. CV09-204-S-EJL |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| ING LIFE INSURANCE & ANNUITY, | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiffs in this action are the Trustees and named fiduciaries of Building

Materials Holding Corporation's (BMHC) BMCC Employees Savings & Retirement Plan

("the Plan"), and BHMC itself, as the Plan Sponsor and a Plan fiduciary. Defendant is

ING Life Insurance & Annuity Company ("ILIAC"), who formerly held invested Plan

funds and performed related administrative services.

This litigation concerns the replacement of ILIAC with another contracted

provider, Prudential Retirement ("Prudential"), and an apparent failure of communication

regarding the transfer of over $100 million of Plan funds upon the termination of ILIAC's

**REPORT & RECOMMENDATION  1**

services.  Plaintiffs allege that because Prudential did not receive the funds before 4:00

p.m. on the date of transfer, Prudential was unable to reinvest them into the market which

resulted in a $375,790.16 loss to the Plan which Plaintiffs seek to recover from ILIAC.

In their complaint, Plaintiffs allege breach of fiduciary duty under several

provisions of ERISA and under Idaho state law, negligence, promissory estoppel and

breach of contract.  ILIAC moved for summary judgment on Plaintiffs' claims for breach

of fiduciary duty under ERISA, which this Court granted.  *See Report and*

*Recommendation* dated June 6, 2010 (Dkt. 53); *Order Adopting Report and*

*Recommendations* dated July 22, 2010 (Dkt. 58).

Now pending before the undersigned Magistrate Judge by Order of Referral dated

February 24, 2010 (Dkt. 46), is Defendant's Motion for Summary Judgment on

Remaining Counts in Plaintiffs' Complaint (Dkt. 63).   Also pending is Plaintiff's Motion

to Exclude Martha Tejera as an Expert Witness for Plaintiffs (Dkt. 65). [1]  Having

carefully reviewed the parties' briefs, considered argument of counsel, and reviewed the

cited authorities and the existing record, the following Report and Recommendation is

issued.

## FACTUAL BACKGROUND

As of January 23, 2008, ILIAC served as the record keeper and custodian of

---

[1] The referral is limited to pre-trial matters; the ability of an expert to testify at trial
is a matter for the District Judge.  This court considers this motion only to the extent the
expert affidavit is considered in this Report and Recommendation, as discussed below.

several retirement plans for Plaintiff, including "the Plan" at issue in this case.  PSOF,

¶ 1.

The assets of the plans were invested primarily in mutual funds on the New York

Stock Exchange, which are valued once a day, based upon the price of the stock at the

close of the market at 4:00 p.m. Eastern Time (ET).  *Plaintiff's Statement of Facts In*

*Response to ILIAC's Motion for Summary Judgment Filed on October 20, 2010*

("PSOF")(Dkt. 69-1), ¶ 2.   Funds must be invested prior to 4:00 p.m. ET to be valued at

that day's closing price.  *Id.* When being transferred from one custodian to another, the

funds must be received by the new custodian before 4:00 p.m. ET, otherwise they are

treated as received the next day and invested at the next day's market price.  *Id.*

In connection with the holding of the assets, ILIAC issued a Group Annuity

Contract ("Contract") to the Plan trustees which contained a "payment" provision. This

provision, Section 8.06 of the Contract, governed the transfer of the funds from ILIAC to

the new custodian, Prudential, upon termination of the Contract.  *Statement of*

*Undisputed Material Facts Supporting Defendant's Motion for Summary Judgment on*

*Remaining Counts in Plaintiffs' Complaint* ("SUMF") (Dkt. 64-1), ¶ 5; *Plaintiffs'*

*Response to ILIAC's Motion for Summary Judgment Filed on October 20, 2010 (Clerk's*

*Docket 63)* ("Plaintiff's Response to MSJ") (Dkt. 69), p. 6.  This provision states:

> The Company will make Payments as directed by the Contract Holder, a
> Participant or such other authorized party, as applicable.  Payment requests
> must be in writing or as otherwise allowed in administrative practice.

**REPORT & RECOMMENDATION  3**

*Id.*; *Declaration of David C. Tarshes Regarding Plaintiffs' Response to ILIAC's Motion for Summary Judgment Filed on October 20, 2010* ("Tarshes Decl."), Exh. O.

The following series of written correspondence encompassed the parties' communications about the transfer. On January 23, 2008, Mark Kailer of BMHC, one of the trustees for the plans, wrote to Carol Decker of ILIAC, stating: "Please be advised that BMHC will be terminating our service agreement with ING Financial Advisors and its Affiliates and transferring the plans listed below to Prudential effective May 1, 2008." PSOF, 69-1, ¶ 4, *Tarshes Decl.*, Exh. TT.

On January 28, 2008, Ian Dunn of ILIAC wrote to Cynthia Shehan of BMHC, copying a representative of Prudential, as follows:

> [W]e will also require a letter signed by an authorized trustee advising us to liquidate the assets. The letter should include the requested effective date of the liquidation (valid ***business day),*** wire date (next valid ***business day*** following the liquidation) as well as transer instructions (either wire instruction or check payee & mailing information) and a reason for leaving ING.
>
> Please know that forwarding assets to a new carrier by check is a 3-day process plus mailing time, however, the wiring of assets would occur the ***business day*** following the surrender.
>
> Wire instructions need to include the Bank Name, City & State of Bank, Account Name & Number, ABA Number.

PSOF, ¶ 5, *Tarshes Decl.*, Exh. P (emphasis added). Mr. Dunn testified in deposition that "the business day will typically – not typically, but does end at 4:00 p.m. eastern time." *Id.*

**REPORT & RECOMMENDATION  4**

On February 28, 2008, Ian Dunn and Carol Decker from ILIAC, and Russell Wilhelm and Sandra Krapfl of Prudential, participated in a conference call to "discuss the mechanics of ILIAC's transfer of the money" in the Plan to Prudential. DSUMF, ¶ 13; PSOF ¶ 6. In preparation for the conference call, Prudential created a spreadsheet entitled "Transition Questions," that did not address the specific time of the wire transfer. DSUMF, ¶ 14. The participants to the conference call confirmed that ILIAC would liquidate the funds on April 30, and wire the funds to Prudential on May 1. PSOF, ¶ 6. None of the participants recall any specific discussion that the funds had to be received by Prudential by 4 p.m. on May 1. DSUMF, ¶¶ 16, 17; PSOF, ¶ 6. However, Mr. Wilhelm believes, and will testify, that he followed Prudential's standard practice, which was to inform the prior record keepers/custodians that funds being transferred must reach Prudential prior to 4:00 p.m., so that they can be reinvested that same day. PSOF, ¶ 6.

On March 26, 2008, John O'Donnell of ILIAC wrote to Mark Kailer of BMHC, setting forth a schedule relating to the handling of the funds which included:

- April 30, 2008 – Assets are liquidated.

- May 1, 2008 – The business day after the liquidation occurs all assets will be wired to the new funding agent and the amount liquidated, detailed by fund, will be provided to your new record keeper.

PSOF, ¶ 8, *Tarshes Decl.*, Exh. UU. Mr. Kailer understood that Mr. O'Donnell's reference to the assets being wired on the "business day" of May 1, was consistent with

Mr. Kailer's understanding that the funds would be wired in time to be reinvested on May 1. *Id.*

On April 24, 2008, Stephanie Erickson, a named Plan trustee and BMHC's Vice President of Human Resources, wrote to Carol Decker of ILIAC:

> As you are aware, we will be terminating our service agreement with your firm and transferring the above referenced plans to Prudential Retirement effective May 1, 2008.

> Please liquidate the assets in all of the plans listed above on April 30, 2008 and wire the proceeds to Prudential on May 1, 2008 using the wire instructions below.

PSOF, ¶ 9, *Tarshes Decl.*, Exh. Q; DSOF ¶ 19. This letter constituted the written instructions to ILIAC that Ian Dunn described would be necessary to effectuate the funds transfer in his correspondence of January 28. *See Tarshes Decl.*, Exh. P. These instructions included the information that ILIAC requested pertaining to wire instructions in the January 28 letter, which did not include a specific time to direct the transfer. *Tarshes Decl.*, Exhs. P&Q. Ms. Erickson understood that in order for the transfer to be effective on May 1, the funds had to be wired to Prudential before the close of business, in time to be reinvested on May 1. PSOF, ¶ 9.

On April 30, 2008, Mr. Dunn of ILIAC e-mailed Celinda Downey of BMHC, and Ms. Decker and Mr. Wilhelm of Prudential: "We have all of the documentation to liquidate the plans today 4/30/08 and wire on 5/1/08." PSOF, ¶ 11; *Tarshes Decl.*, Exh. S. In reply, Mr. Wilhelm requested: "As soon as possible tomorrow, please provide me with a breakdown by fund of each of the wires you will be sending and the final amount of the

**REPORT & RECOMMENDATION  6**

market value adjustment." *Id.* Mr. Dunn replied, stating that: "We will be able to send once everything has been has been reconciled and hopefully it will be early." *Id.* Mr. Dunn testified that his goal was to provide this information early so that Prudential could reinvest the funds on May 1. *Id.; Tarshes Decl*., Exhs. C, S (¶ 7& Exh. 1 at 6-7), DD.

ILIAC liquidated the funds as planned on April 30. PSOF, ¶ 12. ILIAC's internal procedures required Mr. Dunn, located in Connecticut, to fax a written request for approval and initiation of any transfer above $50 million to ING's Treasury Services Department in Atlanta. *Id.*, at ¶ 13. Two of the fund transfers were under $50 million, approved and transferred by Mr. Dunn to Prudential by noon on May 1. *Id.*, at ¶ 14.

The largest fund, just over $100 million, required the Atlanta Treasury Services approval. PSOF, ¶ 15. At 10:50 a.m., Mr. Dunn faxed the wire request to the responsible person in Atlanta, John Jutan, and received confirmation that the fax was transmitted successfully. PSOF, ¶ 16. The fax, however, was lost in the Atlanta office. *Id.* At 11:15 a.m., Mr. Dunn left a voice mail with Mr. Jutan asking if he had received the fax. *Id.*, at ¶ 17. At 11:39 a.m., Mr. Wilhelm e-mailed Mr. Dunn, stating: "I know it's early but I wanted to check on the status of the breakdown and wires? Also, just a reminder that Prudential needs to be in receipt of the wires by 4:00 p.m. eastern time in order to guarantee same day investment." PSOF, ¶ 18; *Tarshes Decl.*, Exh. S (¶ 8 & Ex. 1 thereto at 8), DD.

At 11:44 a.m., Mr. Dunn replied to Mr. Wilhelm, stating: "The plans liquidated successfully and we are having the wires approved now. I am also currently working on the breakdowns for each plan." PSOF, ¶ 19; *Tarshes Decl.*, Exhs. C at pp. 65-68; L at pp. 47-53; S (¶ 8 & Exh. 1 thereto at 8), DD. Following this e-mail, Mr. Wilhelm and Mr. Dunn spoke, and Mr. Wilhelm again reminded Mr. Dunn that Prudential needed to receive the funds prior to 4:00 p.m. in order to reinvest them on that day. PSOF, ¶ 20, *Tarshes Decl.*, Exh. S (¶ 9).

At 1:50 pm, Mr. Jutan returned Mr. Dunn's call and indicated he had not received the fax. PSOF, ¶ 21. Mr. Dunn resent the fax at 1:59 p.m. *Id.* at ¶ 23. At 2:22 p.m., ING's Treasury Services Department approved the wire request, but the written request sat in a wire rack waiting for a department "releaser" to pick up the folder containing the request and to release the funds. PSOF, ¶ 24. Mr. Dunn called Mr. Jutan again at 3:39 p.m. checking on the status of the transfer. *Id.*

ILIAC's procedures allowed for the request to have been expedited by being marked "urgent/rush". PSOF, ¶ 22. This was not done in the case of the $100 million plus transfer. PSOF, ¶ 24.

At 3:59 p.m., ING's Treasury Services Department transmitted the request to JP Morgan Chase to wire the $104,698,310.12 plan funds to Prudential's account. PSOF, ¶ 25. JP Morgan Chase received the funds for transfer into Prudential's account at 4:25 pm, and they reached Prudential's account at 4:26 pm. PSOF, ¶ 26. Mr. Wilhem notified

BMHC and Mr. Dunn that the wire did not get credited until May 2 since it was received after the close of business on May 1, and therefore, would be invested using the May 2 closing market price.  PSOF, ¶ 27.

The Plan participants' had been informed that the transfer would be complete and the funds would be invested on May 1.  Accordingly, Plaintiffs transferred $375,790.16 into the Plan participants accounts in order to make them whole for the losses sustained by the late transfer. PSOF, ¶ 28.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct testimony of the

non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

**REPORT & RECOMMENDATION  10**

**DISCUSSION**

Plaintiffs contends that ILIAC is liable for the losses the Plan suffered when the funds were not reinvested on May 1 under all four remaining state law claims: breach of contract, promissory estoppel, negligence and breach of fiduciary duty. ILIAC argues that it complied with the wire transfer instructions completely as required by the contract, and therefore, fully performed its obligations under the contract. Further, ILIAC contends that because of the fully enforceable, valid, binding written contract, Plaintiffs claims for negligence and promissory estoppel both fail as a matter of law because (1) ILIAC has no duty to Plaintiffs outside of the written contract which would give rise to a negligence claim, and (2) Plaintiff's claim for promissory estoppel is precluded because the written contract governs the claim. Finally, ILIAC argues that Plaintiffs' claim for breach of fiduciary duty under state law fails as a matter of law because the parties are sophisticated business entities engaged in arms length transaction, and have no special relationship which would give rise to a fiduciary duty.

For the reasons explained below, the Court recommends that Defendant's motion for summary judgment be denied on Plaintiffs' breach of contract claim, and granted on the remaining claims.

**A.      Breach of Contract**

This Court is of the opinion that whether or not ILIAC breached the contract provision regarding "payment" involves disputed questions of fact regarding the meaning

of the Plan Trustees' instructions "to wire the funds to Prudential on May 1, 2008," and whether or not ILIAC complied with those instructions.

There is no dispute that there are no written instructions to ILIAC mandating a specific time of day on May 1 that ILIAC direct the bank to transfer the funds to Prudential's account. ILIAC contends, therefore, that in sending the instructions to the bank at 3:59 p.m. on May 1, it fully complied with the terms of the parties' contract. ILIAC argues that it had no control over, or ability to guarantee receipt of, the funds once they left ILIAC's control, and therefore could not and did not guarantee receipt of the funds by Prudential by 4:00 p.m. Its only obligation, ILIAC contends, was to ensure that it directed that the funds be transferred by the close of business, which it met. The Court believes there is sufficient evidence on the record of a contrary conclusion, making the meaning of the instructions and whether ILIAC complied with them disputed questions of fact.

First, the language of the agreed formal written notice of termination with the instructions "to wire the funds to Prudential on May 1, 2008," suggests that the Trustees intended that the funds reach Prudential by the close of business on May 1. This intention is consistent with prior communications both to and from ILIAC. For example, in early discussions, Mark Kailer of BMHC wrote to Carol Decker of ILIAC: "Please be advised that BMHC will be terminating our service agreement with ING Financial Advisors and its Affiliates and transferring the plans listed below *to Prudential effective May 1, 2008.*"

**REPORT & RECOMMENDATION 12**

*Tarshes Decl.*, Exh. TT.  Shortly after, Ian Dunn of ILIAC informed Cynthia Shehan of BHMC, that while "forwarding assets *to a new carrier* by check is a 3-day process, pus mailing time . . .  the wiring of assets *would occur on the business day following the surrender*." *Tarshes Decl.*, Exh. P (emphasis added).

There is no dispute that in this industry, 4:00 p.m. ET constitutes the close of the *business day*, and that any funds received after 4:00 p.m. ET after the close of business are not credited to the recipient's account until the following day, and may not be invested back into the market until the following day.  There is also no dispute that Prudential did not receive, and under the circumstances, could not have reinvested the funds on May 1.

The record further shows that Ian Dunn, operating out of Connecticut and being the principal ILIAC representative handling the transfer, fully intended to have the transfer completed before 4:00 p.m. on May 1, and made several attempts to accomplish this goal on May 1.  He also testified that it is ILIAC's goal and standard practice to transfer any funds, such as the Plan's funds, as "quickly as possible" to allow for their reinvestment into the market on that same day. DSOF, 64-1, ¶ 21; PSOF, ¶ 3a; *Tarshes Decl.*, Exh. C, pp. 12 -18, 37, 51-53, 65.  While ILIAC's goal and effort to complete the transfer to Prudential before 4 p.m. ET, in and of itself, may not create a contractual obligation to do so where one otherwise does not exist, it is evidence of ILIAC's understanding of, and therefore, intended meaning of the transfer instructions.

So, while the formal written instructions did not include a specific time frame to direct the wire transfer, there is evidence in the record that both parties understood and intended that the transfer should be performed in a time and manner that would allow Prudential to receive and reinvest them before the close of that business day. *See Weinstein v. Prudential Property and Cas. Ins. Co.*, 149 Idaho 299, 233 P.3d 1221, 1240 (Idaho 2010)("The well-established law in Idaho is, "Where no time is expressed in a contract for its performance, the law implies that it shall be performed within a reasonable time as determined by the subject matter of the contract, the situation of the parties, and the circumstances attending the performance.") (*quoting Curzon v. Wells Cargo, Inc.*, 86 Idaho 38, 43, 382 P.2d 906, 908 (1963).

ILIAC's argument that it could not and did not guarantee that Prudential would receive the funds or reinvest them on May 1 misses the mark. The contract language does not create a guarantee of other third-parties' actions. It does, however, create an obligation to perform the contract in a reasonable manner to effectuate the intent of the parties. *See id.* ILIAC may still be found to have performed its contractual obligation notwithstanding that the funds were not received or reinvested on May 1, so long as it performed that transfer within a reasonable amount of time to effectuate the intent of the parties under the agreement. *Id.* Whether releasing the funds at 3:59 p.m. on May 1 was a reasonable time for performance is a question of fact on the record before this Court. *See*

*International Engineering Co. v. Daum Industries, Inc.*, 102 Idaho 363, 630 P.2d 155 (1981).

Accordingly, the meaning of and what the parties intended in agreeing to transfer the funds on May 1, and whether ILIAC performed the transfer within a reasonable amount of time given the absence of a specified time to release the wire, are questions of fact in dispute that preclude granting summary judgment in Defendant's favor on Plaintiffs' breach of contract claim.[2]  For these reasons, it is recommended that Defendant's motion for summary judgment on Plaintiff's breach of contract claim be denied.

Plaintiffs made additional arguments in support of their breach of contract claim. The first was that Prudential's instructions to Mr. Dunn that Prudential must receive the funds before 4 p.m. E.T. on May 1 constituted further specific instructions from Plaintiffs that ILIAC was contractually bound to follow.  Because the Court finds that Plaintiffs' direct instructions to ILIAC regarding the transfer involve questions of fact in dispute precluding judgment in Defendant's favor, it need not reach Plaintiffs' additional argument that Prudential's instructions also or alternatively contractually bound ILIAC.

---

[2]Defendant submitted Supplemental Authority in Support of its Motion for Summary Judgment which is *Dale et al., v. Wells Fargo Bank, N.A.*, 370 S. Supp. 2d 880 (D. Minn. 2005).  The Court has reviewed the case, and although there are similarities in the issues, finds it is factually inopposite on several points.

**REPORT & RECOMMENDATION  15**

The second argument was that ILIAC was obligated to transfer the funds to Prudential according to the parties' correspondence "as informed by the industry and custom." The custom and trade practice in a relevant industry may be considered in deciding the meaning of a parties' agreement. *Bischoff v. Quong-Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct. App. 1987) (*citing* RESTATEMENT (SECOND) CONTRACTS §§ 203, 204.) The Court need not decide the merits of or the admissibility of Plaintiffs' evidence regarding the meaning of the parties' correspondence "as informed by the industry and custom." Admissibility of the evidence on a question of fact for trial is a matter for the trial judge to decide. For this reason, the Court does not decide Defendants' Motion to Exclude (Dkt. 65).

**B.    Plaintiffs' claim for promissory estoppel fails as a matter of law, and the record.**

Count Six of Plaintiffs' complaint alleges that "Plaintiffs relied, to their detriment, on ING's commitment to transfer the Plan's funds in time for them to be reinvested on May 1, 2008." Complaint, ¶ 34 (Dkt. 1).

Promissory estoppel requires that: (1) one party's reliance on a promise creates a substantial economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance was reasonable and justified. *U.S. Welding, Inc. v. Battelle Energy Alliance, LLC*, 728 F.Supp.2d 110, 1120 (D. Idaho 2010) (internal quotations omitted). "Promissory estoppel does not apply when there is a valid contract with regard to the same

**REPORT & RECOMMENDATION  16**

subject matter." *Id.* (*citing Gillespie v. Mountain Park Estates, LLC*, 138 Idaho 27, 30 56 P.3d 1277, 1280 (2002)).

Defendant contends that Plaintiffs' claim for promissory estoppel fails as a matter of law because the unambiguous, enforceable contract governs the funds transfer, and ILIAC complied with its express terms. *See United States Welding, Inc.,* 728 F.Supp.2d at 1120. Plaintiffs counter that the agreement did not address the time ILIAC was to direct the transfer the Plan assets. Accordingly, Plaintiffs' contend, that the statement by Russell Wilhelm (of Prudential), acting on behalf of BMHC, that Prudential would need the funds by 4:00 p.m. ET in order to reinvest them, to which ILIAC agreed, is actionable under a promissory estoppel claim. *See* PSOF, ¶ 6.

The Court agrees with Defendant that Plaintiffs' promissory estoppel claim fails as a matter of law because the contract provision governs the subject matter of the transfer of the funds, and how the transfer is to be accomplished. The parties agree that the Contract "Payment" provision, § 8.06, governs the transfer of the funds in this matter. It unambiguously states that ILIAC "will make Payments as directed by the Contract Holder, a Participant or such other authorized party" and that such payments must be "in writing or as otherwise allowed in administrative practice." Contract, § 8.06. Although the contract has no "precisely-tailored provision" that speaks directly toward what the Contract Holder's directions should be under any given "payment" transaction, this provision deals with the "essential subject matter" and answers the question of how ILIAC was to transfer

the funds to Prudential generally. *See United States Welding, Inc.*, 728 F.Supp.2d at 1116-17.

The Court also concludes alternatively that Plaintiffs' failed to come forward with evidence sufficient to create a genuine issue of material fact in dispute on this claim. "Central to any promissory estoppel claim is proof of a promise." *United States Welding, Inc.*, 728 F.Supp.2d at 1120. Plaintiffs' evidence in support of this claim is Mr. Wilhelm's testimony that he believes, during a conference call on February 28 with ILIAC, Prudential and BMHC representatives, that he followed Prudential's procedures and advised ILIAC that the funds had to be received by Prudential before 4:00 p.m. to be reinvested on that day. PSOF, ¶ 6. Plaintiffs suggest that ILIAC agreed to transfer the funds accordingly, and that Plaintiff relied on this agreement. Plaintiffs failed to point to evidence in the record, however, that a request was actually made of ILIAC to which ILIAC agreed.

For these reasons, the Court recommends that Defendant's motion for summary judgment on Plaintiffs' claim for promissory estoppel be granted.

## C.    Breach of Fiduciary Duty Under State Law

Count Three of Plaintiffs' Complaint alleges breach of fiduciary duty. Complaint (Dkt. 1), ¶ 31.

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 203 P.3d 694, 699 (2009) (citation and

marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880–881

(9th Cir.2007) (applying Nevada law).

Defendant argues that no fiduciary relationship exists in the context of an arms-

length debtor-creditor relationship, such as that between ILIAC and the Plan. *See Idaho*

*First Nat. Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 277, 824 P.2d 841, 852

*(*1991)(*citing Black Canyon Racquetball Club v. First National Bank*, 119 Idaho 171, 176,

804 P.2d 900, 905 (1991)(debtor-creditor is generally not a fiduciary relationship) and

*Peterson v. Idaho First Nat. Bank*, 83 Idaho 578, 367 P.2d 284 (1961) (depositor-customer

situation is considered a debtor-creditor relationship)).

Plaintiffs contend that ILIAC is a fiduciary because it served as Plaintiffs' funding

agent and that such an agency relationship gives rise to fiduciary duties within the scope of

the agency.

Agency is "the fiduciary relationship that arises when one person (a "principal")

manifests assent to another person (an "agent") that the agent shall act on the principal's

behalf and subject to the principal's control, and the agent manifests assent or otherwise

consents so to act." RESTATEMENT (THIRD) OF AGENCY, § 1.01. "The Idaho Supreme

Court has long described the relationship between principal and agent as a fiduciary

relationship." *R Homes Corp. v. Herr*, 142 Idaho 87, 123 P.3d 720 (Idaho App.

2005)(finding fiduciary relationship between employee/agent and employer/principal); *see*

*also Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 892, 243 P.3d 1069, 1080

(Idaho 2010); *Mitchell v. Barendregt*, 120 Idaho 837, 844, 820 P.2d 707, 714

(Ct.App.1991) (found to be in error on other grounds by *Polk v. Larrabee*, 135 Idaho 303,

314, 17 P.3d 247, 258 (2000) ("Examples of relationships from which the law will impose

fiduciary obligations on the parties include when the parties are: members of the same

family, partners, attorney and client, executor and beneficiary of an estate, principal and

agent, insurer and insured, or close friends.").

But, as Plaintiffs recognize, "[a] fiduciary relationship does not depend upon some

technical relation created by or defined in law, but it exists in cases where there has been a

special confidence imposed in another who, in equity and good conscience, is bound to act

in good faith and with due regard to the interest in one reposing the confidence." *Jones v.*

*Runft, Leroy, Coffin &Mathews, Chartered*, 873 P.2d 861, 868 (Idaho 1994) (*quoting*

*Stearns v. Williams*, 240 P.2d 833, 840-41-(Idaho 1952)). The Supreme Court of Idaho has

emphasized that the actual relationship between the parties, and not the title, e.g., "agent-

principal," must be considered in deciding the existence of a fiduciary duty:

> The term fiduciary implies that one party is in a superior position to the other
> and that such a position enables him to exercise influence over one who reposes
> special trust and confidence in him .... As a general rule, mere respect for
> another's judgment or trust in this character is usually not sufficient to establish
> such a relationship. The facts and circumstances must indicate that the one
> reposing the trust has foundation for his belief that the one giving advice or
> presenting arguments is acting not in his own behalf, but in the interests of the
> other party.

*High Valley Concrete, LLC v. Sargent*, 149 Idaho 423, 234 P.3d 747 (2010)(citing 121

**REPORT & RECOMMENDATION  20**

Idaho 266, 278, 824 P.2d 841, 853 (1991)(*quoting Burwell v. S.C. Nat'l Bank*, 288 S.C. 34, 340 S.E.2d 786, 790 (1986)).

"Although . . . '[f]iduciary relationships are commonly characterized by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other" . . . . these situations commonly arise when parties are dealing on unequal terms . . . ." *High Valley Concrete, LLC*, 234 P.3d at 753 (citing *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 603, 150 P.3d 288, 296 (2006) and *Idaho First Nat. Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991).

"Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction." *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints*, 136 Idaho 922, 928, 42 P.3d 715, 721 (Ct.App.2002) (citing *Mitchell v. Barendregt*, 120 Idaho 837, 844, 820 P.2d 707, 714 (Ct.App.1991).

Moreover, generally "[a] commercial contract creates a fiduciary relationship only when one party agrees to serve in a fiduciary capacity." *Household Group LLLP v. Fuss*, 2007 WL 1650933 (N.D. Cal. 2007) (*citing e.,g., Morgan v. Am. Fid. Fire Ins. Co.*, 210 F.2d 53, 54-56 (8th Cir. 1954) (finding fiduciary relationship in holding premiums where insurance agent agreed to act as trustee). Simply handling funds on behalf of another party does not create a fiduciary relationship, particularly in the face of contrary contractual language. *See id.*; *Urias v. PCS Health Systems, Inc.*, 118 P.3d 29, 35 (Ariz. Ct. App.

2005) (finding no agency relationship in absence of contract language creating agency and evidence of principal's control over agent in transaction).

If the existence or non-existence of agency is a disputed question of fact, then it is for the jury to decide. *Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972); *Thornton v. Budge*, 74 Idaho 103, 257 P.2d 238 (1953).

The Court is of the opinion that Plaintiffs have failed to present evidence sufficient to raise a disputed question of fact as to whether ILIAC was acting as an agent in transferring the Plan funds to Prudential, particularly given the express language of the Contract disclaiming that ILIAC was a fiduciary (Contract, § 2.01), and the commercial nature of the transaction involved.  Plaintiffs point to provisions of the Contract that provide that ILIAC will act according to the express provisions of the Plan's trustees or participants in making payments on their behalf, as well as references to Prudential as being a 'successor funding agent.'  *See Plaintiffs' Response to ILIAC's Motion for Summary Judgment Filed on October 20, 2010 (Clerk's Docket 63)*, (Dkt. 69), p. 19 - 20. Plaintiffs  present no evidence that ILIAC, in connection with the transfer, manifested assent to be a Plan agent, or was in a "superior position" emphasized under Idaho law as necessary to establish a fiduciary relationship in an commercial transaction.  *See Idaho First National Bank,* 824 P.2d at 853. This Court is of the opinion that something more than what is on this record is necessary under Idaho law to create the type of relationship

**REPORT & RECOMMENDATION  22**

giving rise to a fiduciary relationship and attendant duties outside of those expressly agreed to in the Contract. *Id.*

For this reason, the Court recommends that Defendant's motion for summary judgment be granted as to Plaintiffs' claim for breach of fiduciary duty.

**D.     Negligence**

Count Four of Plaintiffs' Complaint alleges that "ING's failure to transfer the Plan's funds in time to be reinvested on May 1, 2008 constituted negligence under Idaho common law."  Complaint, ¶ 32.

"If damages are purely economic and pertain to the subject matter of the transaction, there can be no recovery under a negligence theory."  *O Bar Cattle Co. v. Owyhee Feeders, Inc.*, 2010 WL 2652289, *1 (D.Idaho 2010) (*citing Aardema v. United States Dairy Systems, Inc.,* 147 Idaho 785, 215 P.3d 505, 510 (Idaho 2009)); *see Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 1007, 895 P.2d 1195, 1200 (1995).  This rule is subject to few specifically enumerated exceptions. *Id.*  Plaintiffs argue that one such exception applies in this action which is in cases involving a "special relationship" between the parties.  *Id. (citing Just's, Inc. v. Arrington Const. Co.*, 99 Idaho 462, 583 P.2d 997 (1978).

In this action, the transfer of the Plan funds pertains to the subject matter of the Contract, and Plaintiffs' are seeking only economic losses from the failure to invest the

funds at the higher market rate of the day of the transfer.   Absent an applicable exception to the economic loss rule, Plaintiffs' negligence claim is clearly barred.

Plaintiffs contend that ILIAC was Plaintiffs' agent with respect to the handling of the Plan funds, which not only created a fiduciary relationship, but also the type of "special relationship" encompassed by this exception to the economic loss doctrine. Defendant disagrees, and contends that the parties entered into an arms-length contractual relationship, with no duties arising other than those set forth in the contract.

The "special relationship" exception applies "to those situations where the relationship between the parties is such that it would be equitable to impose such a duty." *Id.* These situations are "extremely rare." *Id.*  Idaho has recognized only two such situations. *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 108 P.3d 996 (2005) (citations omitted); *Millenkamp v. Davisco Foods Intern., Inc.*, 391 F.Supp.2d 872, 878 (D. Idaho 2005).  The first is where a professional or quasi-professional performs a personal service negligently. *See  McAlvain v. General Insurance Company of America*, 97 Idaho 777, 554 P.2d 955, 958 (1976)(Finding special relationship between insurance agent and insured). The second is where an entity holds itself out as having a specialized knowledge or skill, and induces reliance upon that knowledge or skill. *Blahd v. Richard B. Smith, Inc.*, 141 Idaho 296, 108 P.3d 996, 1001 (2005) (*citing Duffin v. Idaho Crop Improvement Assoc.*, 126 Idaho 1002, 895 P.2d 1195, 1200 (1995)(Finding a special relationship existed between the only Idaho authorized certifier of seed potatoes and farmer who was induced

to rely on such expertise.) "[N]o such special relationship exists between banks and their customers." *Eliopulos v. Knox*, 123 Idaho 400, 408, 848 P.2d 984, 992 (Idaho App. 1992) (citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991); *Black Canyon Racquetball Club*, 119 Idaho at 176, 804 P.2d at 905).

This case does not involve a professional or quasi-professional providing a personal service. The first situation clearly does not apply.

As for the second situation, this Court is of the opinion that Plaintiffs have failed to come forward with evidence that would establish, or raise a question of fact, that held itself out as having specialized knowledge or skill and induced Plaintiffs' reliance on such knowledge or skill. There is no evidence before this Court that ILIAC "held itself out as having expertise regarding a specialized function" or that such representations induced Plaintiffs' reliance upon ILIAC's "superior knowledge and skill."

Finally, this Court has already determined that there is insufficient evidence to raise a question of fact as to whether or not ILIAC was acting as an agent in transferring the funds to Prudential under the circumstances of this case. Accordingly, the Court need not decide whether to expand the current economic loss exception to encompass the agent/principal relationship and finds that no exception appears to apply on this record.

Accordingly, the Court is of the opinion that there is insufficient evidence raising an issue of fact that any such "special relationship" exists to except the economic loss rule

under the circumstances of this action.  For these reasons, the Court recommends that

Defendant's motion for summary judgment be granted as to Plaintiffs' negligence claim.

## CONCLUSION

For the foregoing reasons, this Court is of the opinion that genuine issues of

material fact exist as to whether or not ILIAC complied with the terms of the contract in

its action undertaken to transfer the funds to Prudential, and the motion for summary

judgment should be denied as to Plaintiffs' breach of contract claim.  The motion should

be granted, however, with respect to Plaintiffs' claims for negligence, promissory estoppel

and breach of fiduciary duty.

Further, this Court's referral is limited to pre-trial matters.  As this Court did not

find it necessary to consider Plaintiff's Affidavit of Martha Tejeras in deciding this

motion, it does not reach the issue of whether the witness is a proper expert for trial

because only pre-trial matters are referred to the undersigned Magistrate Judge.

## **<u>RECOMMENDATION</u>**

Based upon the foregoing, the Court hereby recommends that Defendants' Motion

for Summary Judgment on Remaining Claims (Dkt. 63) be DENIED as to Count Five and

GRANTED as to Counts Three (Breach of Fiduciary Duty), Four (Negligence) and Six

(Promissory Estoppel).

Written objections to this Report and Recommendation must be filed within

fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1 and that the

**REPORT & RECOMMENDATION  26**

failure to do so may result in that party waiving the right to raise factual and/or legal objections in the Ninth Circuit Court of Appeals. The parties are advised further that this is a report and recommendation and not a final, appealable order, and thus no appeal can be taken from this report and recommendation.

DATED: **September 6, 2011**.



Honorable Larry M. Boyle
United States Magistrate Judge